**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

OLYMPUS AMERICA, INC.,

              Plaintiff,

      v.

CINTAS CORPORATION No. 2,       No. 1:20-cv-03428-NLH-KMW

              Defendant.

---

CINTAS CORPORATION No. 2,       **OPINION**

      Third-Party Plaintiff,

      v.

TECH DATA CORPORATION,

      Third-Party Defendant.

---

**APPEARANCES:**

ANDREW GEORGE HUNT
KENNETH T. LEVINE
DE LUCA LEVINE LLC
3 VALLEY SQUARE
SUITE 220
BLUE BELL, PA 19422

    *On behalf of Plaintiff Olympus America, Inc.*

JENNIFER MARIE BENNETT
MICHAEL B. DEVINS
MCELROY DEUTSCH MULVANEY & CARPENTER LLP
1300 MOUNT KEMBLE AVENUE
P.O. BOX 2075
MORRISTOWN, NJ 07962

    *On behalf of Defendant/Third-Party Plaintiff Cintas*
*Corporation No. 2.*

MEGAN M. ADMIRE
AKERMAN LLP
520 MADISON AVE.
20TH FLOOR
NEW YORK, NY 10022

SHANE MURPHY O'CONNELL
AKERMAN LLP
666 FIFTH AVENUE
20TH FLOOR
NEW YORK, NY 10103

*On behalf of Third-Party Defendant Tech Data Corporation.*

**HILLMAN**, District Judge

This matter comes before the Court on Third-Party Defendant Tech Data Corporation's motion to dismiss or stay the Third-Party Complaint of Third-Party Plaintiff Cintas Corporation No. 2 and compel arbitration.  For the reasons expressed below, Tech Data's motion will be denied without prejudice.

## BACKGROUND

At some point prior to April 13, 2018, Plaintiff Olympus America, Inc. entered into a contract for Tech Data to provide warehousing for Olympus products, pursuant to which Tech Data maintained Olympus inventory at its warehouse located at 1 Technology Drive in Swedesboro, New Jersey.  Previously, on May 11, 2017, Tech Data had entered into a separate agreement (the May 11 Agreement) with Cintas to perform yearly and other necessary periodic inspections of, and to properly maintain, the fire suppression system at the subject warehouse.

According to Cintas, under that agreement "Tech Data agreed to defend, indemnify, and hold Cintas harmless from any claims and damages arising out of or associated with the Agreement . . . [and] also agreed to obtain and maintain insurance coverage sufficient to cover any and all losses, damages, and expenses arising out of or relating to the Agreement in any way, and to name Cintas as an additional insured under that policy." (ECF No. 16 at 2-3). The agreement also incorporated the terms of a document referred to by the parties as the March 28 Quote, which contained an arbitration clause that provided that:

> Any dispute or matter arising in connection with or relating to this Agreement other than an action for collection of fees due Cintas hereunder shall be resolved by binding and final arbitration. The arbitration shall be conducted pursuant to applicable Ohio arbitration law . . . The exclusive jurisdiction and forum for resolution of any such dispute shall lie in Warren County, Ohio.

ECF No. 36-3, Ex. B at § 23.

According to Tech Data, however, the parties later entered a further agreement via a Purchase Order sent by Tech Data to Cintas on July 12 (the July 12 Agreement). That agreement similarly included an arbitration clause:

> "Any dispute or matter arising in connection with or relating to the Contract shall be resolved by binding and final arbitration under applicable state or federal law providing for the enforcement of agreements to arbitrate disputes. Any such dispute shall be determined on an individual basis, shall be considered unique as to its facts, and shall not be consolidated in any arbitration or other

proceedings with any claim or controversy of any
other part."

ECF No. 33-4, Ex. C at 3 § 14).

Then, on April 13, 2018, water leaked from the Technology
Drive warehouses' sprinkler system, causing Olympus to sustain
damages.  In response to this incident, Olympus later filed the
original complaint in this action on March 31, 2020, naming
Cintas as the only defendant and claiming that Cintas's
negligence related to the sprinkler system caused the leak and
any related damages.  (ECF No. 1).  Cintas, after filing an
answer to the complaint, followed that by filing its own Third-
Party Complaint against Tech Data on July 10, 2020.  (ECF No.
16).  The Third-Party Complaint alleges claims for contribution
and indemnification for any damages sustained by Olympus, as
well as breach of contract regarding Tech Data's alleged duty to
provide insurance coverage for any losses, damages, or expenses
arising out of the Agreement.

On October 19, 2020, Tech Data filed a motion to dismiss or
in the alternative stay the Third-Party Complaint and compel
arbitration, arguing that under the July 12 Agreement Cintas's
claims must be submitted to arbitration instead.  (ECF No. 33).
Cintas and Tech Data fully briefed that motion, and Plaintiff
Olympus further filed a brief raising concerns regarding the
impact of any such order on their ability to obtain discovery

4

from Tech Data related to the claims in their original

complaint.  (ECF No. 39).  The motion is therefore fully briefed

and ripe for adjudication.

## DISCUSSION

### I.  Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this action

pursuant to 28 U.S.C. § 1332, as there is complete diversity of

the parties and the amount in controversy exceeds $75,000.

### II.  Analysis

Before the Court may delve into the substance of the

parties' arguments, it must first address the procedural posture

of this case and the form of the presently pending motion, and

determine under which standard the motion should be analyzed.

Tech Data's motion is stylized as a "Motion to Dismiss or in the

Alternative, for an Order to Stay the Third-Party Complaint and

Compel Arbitration."  Its moving brief cites only to Federal

Rule of Civil Procedure 12(b)(1), and contends that the proper

avenue for it to attack Cintas's claims due to the existence of

an arbitration clause is to seek dismissal for lack of subject

matter jurisdiction.

However, both the motion itself and Tech Data's briefing

further request that if the Court declines to dismiss the Third-

Party Complaint, the Court should alternatively issue an order

staying the complaint and compelling arbitration of the claims

therein.  (ECF No. 33; ECF No. 33-7 at 14).  While neither party directly addresses the import of this request, the Court notes that were it to determine that it lacked subject matter jurisdiction over this action under Rule 12(b)(1), it would be required to dismiss the complaint entirely and would have no power to stay the case instead.  Accordingly, the Court interprets Tech Data's request for alternative relief in its motion papers as stating an alternative motion under Rule 12(b)(6), the traditional route for pursuing an order staying a complaint and compelling arbitration.  See Liberty Mut. Fire Ins. Co. v. Yoder, 112 F. App'x. 826, 828 (3d. Cir. 2004).

The Court therefore has before it two alternative motions seeking to avoid litigation of Cintas's claims against Tech Data, under two separate rules.  Tech Data briefly asserts that "Rule 12(b)(1) provides the proper inquiry in deciding whether this Court has the authority to hear the dispute that is subject to a mandatory arbitration provision."  (ECF No. 33-7 at 5) (citing Thompson v. Nienaber, 239 F. Supp. 2d 478, 481-82 (D.N.J. 2002)).  However, Tech Data has largely overstated the clarity of the law in this circuit regarding the proper mechanism for attacking claims based on an arbitration clause. This Court, having previously found itself similarly faced with alternative motions under Rules 12(b)(1) and 12(b)(6), addressed the murkiness of this question in its Opinion in Laudano v

Credit One Bank, 2016 WL 3450817, No. 15-7668(NLH/KMW) (D.N.J. June 22, 2016).  There, the Court, referring to its even earlier discussion of the issue in Holdbrook Pediatric Dental, LLC v. Pro Computer Service, LLC, No. 14-6115 (NLH/JS), 2015 WL 4476017, at *2 (D.N.J. July 21, 2015), noted that courts in this district "have been inconsistent in entertaining the use of Rule 12(b)(1) to move to compel arbitration."  2016 WL 3450817, at *4 n.4.

Simply put, courts in this circuit have reached different conclusions on this question.  This Court itself has previously stated that "Rule 12(b)(1) ... is not the correct rule of law under which to assert a contract-based defense requiring arbitration."  Holdbrook Pediatric, 2015 WL 4476017, at *2 (quoting Masoner v. Educ. Mgmt. Corp., 18 F. Supp. 3d 652, 656 (W.D. Pa. 2014)).  Some other courts have agreed.  See, e.g., Defillipis v. Dell Financial Services, No. 3:14-CV-00115, 2014 WL 4198015, at *1 (M.D. Pa. Aug. 22, 2014).  Alternatively, some courts have found that they "may use Rule 12(b)(1) to decide whether to dismiss a suit by virtue of an arbitration agreement between the parties."  Hoboken Yacht Club LLC v. Marinetek North America Inc., No. 19-12199 (JMV), 2019 WL 7207486, at *2 (D.N.J. Dec. 26, 2019) (citing Asbell v. Integra Life Sciences Holdings Corp., No. 14-677, 2014 WL 6992000, at *2-4 (D.N.J. Dec. 10, 2014)); see also M. Cohen and Sons, Inc. v. Platte River

7

Insurance Company, 2021 WL 791831, at *4 n.1, 4-5 (D.N.J. Feb. 27, 2021) (acknowledging difference between 12(b)(1) approach and 12(b)(6) approach, but then proceeding to analyze plaintiff's 12(b)(1) motion).  Adding to the potential confusion, even the court in Hoboken Yacht Club, which recently addressed an arbitration clause argument under Rule 12(b)(1), acknowledged serious "doubts that Rule 12(b)(1) is the appropriate section under which to proceed."  2019 WL 7207486, at *2 n.3 (explaining potential argument that the Supreme Court's reasoning in its Atlantic Marine Const. Co. v. U.S. Dist. Court, 571 U.S. 49 (2013) decision may mean that "either a federal court has subject matter jurisdiction or it does not, regardless of any agreement between the parties").

The Third Circuit, for its part, does not appear to have directly addressed this issue in a precedential opinion.  As this Court noted in Laudano, our Court of Appeals has previously suggested in an unpublished decision that Rule 12(b)(1) is not the proper vehicle because a motion to compel arbitration raises a defense to the merits and not jurisdiction.  See Liberty Mut. Fire Ins. Co., 112 F. App'x. at 828 ("[M]otions seeking the dismissal of [an] . . . action on the basis that arbitration is required are not jurisdictional as they raise a defense to the merits of an action. Rather, such dismissals are generally effected under Rule 12(b)(6) ... or Rule 56.") (internal

citations and quotations omitted).  In contrast, in a separate
unpublished decision, the Third Circuit appeared to approvingly
discuss a district court's prior action in dismissing a
complaint for lack of subject matter jurisdiction due to the
existence of an enforceable arbitration clause.  <u>Organizational
Strategies, Inc. v. Feldman Law Firm LLP</u>, 604 F. App'x 116, 117–
19 (3d Cir. 2015).  However, the issue on appeal in that case
was focused not on the decision to address the original motion
under Rule 12(b)(1), but instead focused on the district court's
discussion regarding the proper forum for a future arbitration,
and on the appropriateness of the district court's later action
in granting a separate motion to compel arbitration after the
case had already been dismissed for lack of subject matter
jurisdiction.  <u>Id</u>.  Accordingly, the specific propriety of
utilizing a 12(b)(1) motion in this context was not squarely
presented before the court.

In the absence of clear, precedential Third Circuit
authority on this issue, the Court is of the view that the
better course is to address Tech Data's motion under Rule
12(b)(6).  This decision follows closely on this Court's prior
handling of a similar situation in <u>Laudano</u>.  There, the Court
admittedly decided not to simply dismiss the defendant's
12(b)(1) motion.  While the Court did so in part because the
Third Circuit had never explicitly held that such a motion was

an improper way to handle an arbitration clause, it emphasized the fact that the 12(b)(1) motion was "coupled with a motion under Rule 12(b)(6)."  Laudano, 2016 WL 3450817, at *4 n.4.

While not outright dismissing the 12(b)(1) motion as improper, the Court proceeded to address the motion before it in that case under Rule 12(b)(6).  The Court ultimately determined that under Third Circuit precedent it could not address the issue of whether there was an enforceable arbitration clause that governed the claims before it at that stage of the litigation, denied the motion without prejudice, and directed the parties to conduct limited discovery and return to re-address the issue under the standards for a Rule 56 motion for summary judgment.  Id. at *5-6.  Based on this finding, the Court ultimately denied the 12(b)(1) motion as moot.  Id. at *4 n.5.  The Court, in a footnote, explained its view of the 12(b)(1) motion before it in greater detail:

> As we have noted, there is a strong federal policy in favor of using arbitration to resolve disputes as set forth in the FAA. [Kirleis v. Dickie, McCamey & Chilcote, 560 F.3d 156, 160 (3d Cir. 2009)]. This does not mean, as Defendant suggests, that this Court presently lacks subject matter jurisdiction. The Court retains jurisdiction to determine the threshold question of whether there is a valid arbitration agreement between the parties. The FAA provides, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. Thus, this Court retains jurisdiction until it decides the making of the

agreement is not in issue. As the Third Circuit said, "This presumption in favor of arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." Kirleis, 560 F.3d at 160. Therefore, to the extent Defendant's motion pursuant to Fed. R. Civ. P. 12(b)(1) is premised on an argument this Court lacks jurisdiction to determine whether the parties entered into an agreement to arbitrate the motion will be denied. To the extent it merely provides an alternative basis to argue the matter should be dismissed because of such an agreement to arbitrate exists, the motion is denied as moot in light of our decision to allow limited discovery. Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764 (3d Cir. 2013).

Id.

In following with this prior explanation, the Court believes that the act of determining that the parties' agreed upon arbitration clause governs the claims before it, and which would therefore require it under the FAA to "make an order directing the parties to proceed to arbitration," 9 U.S.C. § 4, is conceptually the same as enforcing the contractual provision and is an exercise of judicial power that is incompatible with a finding that the Court lack subject matter jurisdiction. Accordingly, the Court will proceed in the same manner as it did in Laudano, and will address the pending motion in the alternative manner requested by Tech Data itself: as a motion to stay the complaint and compel arbitration.

The Third Circuit outlined the approach for district courts faced with such motions in Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013).  There,

11

the Third Circuit explained that where the issue of whether the parties entered into an enforceable agreement to arbitrate a dispute can be decided without additional evidence, the appropriate standard to apply is that for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  When that is not possible, however, the court should permit limited discovery on the question of arbitrability.  "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard" pursuant to Rule 56.  Id. at 776.  "Accordingly, where the complaint and supporting documents are unclear as to an agreement to arbitrate, or where a plaintiff responds to a motion to compel with additional facts sufficient to place arbitrability 'in issue,' the parties should be entitled to discovery."  Discovery House v. Advanced Data Systems RCM, Inc., No. 19-21602 (KM) (JBC), 2020 WL 6938353, at *4 (D.N.J. Nov. 25, 2020).

Prior to moving into the substance of this specific dispute, the Court will briefly explain exactly why it matters in this case which rule Tech Data's motion is analyzed under. It is well established that a court reviewing a motion under the standards for Rule 12(b)(6) must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  S. Cross Overseas Agencies,

Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir.
1999).  And as the Court just explained above, the Third Circuit
has explicitly directed that when a court cannot assess the
existence of an enforceable arbitration clause based only on the
surface of the complaint and the supporting documents, it must
permit limited discovery and assess the issue later under a Rule
56 standard.  However, the Court has broader power to consider
extrinsic evidence when faced with a dispute over subject matter
jurisdiction: "if a factual question pertaining to jurisdiction
exists, the court may examine facts and evidence outside of the
pleadings to assure itself of its authority to hear the case."
Asbell, 2014 WL 6992000, at *2 (quoting Daly v. Norfolk S.R.
Co., No. CIV. 09-4609 WJM, 2011 WL 2559533, at *1 (D.N.J. June
27, 2011)).  Accordingly, if Tech Data's motion relies on
evidence outside of the complaint and the documents attached to
it or incorporated by it, the Court may only consider them at
this stage if it is assessing its jurisdiction over the action,
not analyzing the motion under the 12(b)(6) standard.

     The Court notes here that in many of the cases where other
courts proceeded to address a motion under Rule 12(b)(1)
instead, the issues presented to those court focused on either
purely legal questions or questions regarding only the language
of the contract itself, which made the distinction between the
standards for a 12(b)(1) motion and a 12(b)(6) motion almost

entirely formalistic.  See, e.g., Asbell, 2014 WL 6992000, at 3-4 (analyzing only the enforceability of the specific language of the contract and arbitration provision properly presented to the court at that stage).  In the Thompson v. Nienaber, 239 F. Supp. 2d 478 (D.N.J. 2002) case Tech Data's moving brief relies upon, for example, Judge Simandle straightforwardly acknowledged that his decision to address the arbitration clause under a Rule 12(b)(1) motion — rather than requiring it to be brought as a motion to compel under the 12(b)(6) standard — was due in part to the fact that "[w]ere this Court to dismiss the action because the wrong document was filed, the defendants would undoubtedly file a motion to compel arbitration and the parties would present the same arguments as presented here. Therefore, this Court will avoid such a 'hypertechnical' ruling that would inevitably lead to duplicative litigation and this Court will presently consider the arbitrability of this dispute."  Id. at 484.  Essentially, the court there appeared to recognize that, given the specific facts of the case and the arguments before it at that stage, the determination as to whether an enforceable arbitration clause precluded litigation of the claims before it would be the same under either rule.

The Court's review of Tech Data's motion and the parties' arguments presented here make clear that the distinction between Rules 12(b)(1) and 12(b)(6) is anything but formalistic or

"hypertechnical" in this case — and that the Court simply cannot address the threshold issue presented here based only on the complaint and the documents incorporated by it or attached to it.  Tech Data's motion is based on a conceptually simple argument: the parties agreed to the July 12 Agreement, which included an arbitration provision that encompasses Cintas's claims.  However, Cintas's Third-Party Complaint makes no direct reference to the July 12 Agreement.  And, perhaps more importantly, even were the document itself incorporated via indirect reference, the Court finds that the complaint does not sufficiently reference or incorporate any facts regarding the emails on which Tech Data relies in arguing that the July 12 Agreement, and not the May Agreement and the March 28 Quote, is the operable contract governing the parties' business relationship.  Cintas itself opposes the motion on the basis that the July 12 contract is not the governing contract.

The question of which agreement governs the parties' contractual relationship, and Tech Data's basic arguments underlying its motion, therefore center on extrinsic evidence and go beyond what the Third Circuit has outlined as permissible analysis for the Court to engage in at this stage in this litigation.  Put another way, having declined to address Tech Data's motion as a motion to dismiss for lack of subject matter jurisdiction, but rather as a motion to compel arbitration

15

governed by the standards for Rule 12(b)(6), the Court cannot grant the requested relief because Tech Data's motion does not rely only on documents or evidence referenced or incorporated by the Third-Party Complaint.

The Court recognizes that there is yet another wrinkle to this case: as Tech Data notes in its reply brief, both the March 28 Quote that both parties appear to agree is part of the May 11 Agreement, and the July 12 Agreement, include arbitration provisions with nearly identical language regarding the scope of the claims they govern.  Compare ECF No. 36-3, Ex. B at § 21 ("Any dispute or matter arising in connection with or relating to this Agreement other than an action for collection of fees due Cintas hereunder shall be resolved by binding and final arbitration.") with ECF No. 33-4, Ex. C at 3 § 14 ("Any dispute or matter arising in connection with or relating to the Contract shall be resolved by binding and final arbitration . . .").  Given this fact, it appears highly likely that, regardless of which contract's terms are ultimately found to govern the parties, the question as to whether Cintas's claims must be submitted to arbitration will be the same.  But so long as the parties dispute which contract's language must be enforced here — and so long as the motion before the Court is centrally based on the second of those two agreements — the Court cannot simply step beyond this threshold question, decide that it does not

16

matter which contract governs the parties' relationship, and state that it is compelling arbitration either way.

And importantly, even were the Court to determine that Cintas's claims must in fact be submitted to arbitration, that is not the only question before the Court regarding these competing arbitration clauses.  As Cintas points out repeatedly, the May 11 Agreement's arbitration clause explicitly requires that "[t]he exclusive jurisdiction and forum for resolution of any such dispute shall lie in Warren County, Ohio."  Id.  The July 12 Agreement includes no such requirement.  Without a clear answer as to which contract's language must be enforced here, the Court cannot determine whether the parties must be compelled to conduct any potential arbitration in a specific forum, and therefore cannot properly rule on the motion presently before it.[1]

Accordingly, the Court will dismiss the motion without prejudice.  If Tech Data would like to re-file a motion to

---

[1] Given that this forum requirement is the central difference between the two arbitration clauses, Tech Data may have chosen to pursue its motion based on the July 12 Agreement due to a desire to avoid the forum requirement found in the May 11 Agreement's arbitration clause.  Cintas itself alleges that Tech Data is instead "impermissibly attempting to legitimize its unsigned documents in an effort to rely on what it views as favorable indemnification language."  (ECF No. 36 at 5). Regardless of Tech Data's specific reason for relying on the July 12 Agreement rather than the May 11 Agreement in arguing that Cintas's claims must be submitted to arbitration, the Court's findings here are the same.

compel relying purely on the May 11 Agreement, it may proceed to do so without delay and the Court will hear the parties' full arguments regarding whether Cintas's claims are in fact governed by the contract's arbitration clause.  To the extent that there is an ongoing dispute as to which contract governs the parties' relationship, and Tech Data wishes to further pursue its argument that the July 12 Agreement is the operable agreement, the parties will be permitted to engage in limited discovery on that question and Tech Data may thereafter return to the Court with a renewed motion to compel, which will be analyzed under the standards for a Rule 56 motion.[2]

## CONCLUSION

For the reasons expressed above, Cintas' motion to dismiss or stay the complaint and compel arbitration (ECF No. 33) will be denied without prejudice.

An appropriate Order will be entered.


Date: __April 2, 2021__              ___/s Noel L. Hillman___
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

[2] The Court recognizes that it recently ordered Tech Data to file supplemental briefing addressing Cintas's argument that the statutory contribution claim in the Third-Party Complaint was not covered by any contractual arbitration provision.  (ECF No. 52).  Given the Court's findings in this Opinion and the accompanying Order's dismissal of the motion without prejudice, the supplemental briefing previously ordered is no longer necessary at this time.  The Court anticipates that the parties will more fully and directly address this question in litigating any further motions to compel arbitration.